| | |
|---|---|
| **JESSICA LOGGINS**, on Behalf of Herself and All Others Similarly Situated, | Case No. |
| Plaintiff, | |
| vs. | **CLASS ACTION COMPLAINT** |
| **BEECH-NUT NUTRITION COMPANY**, | |
| Defendant. | <u>**DEMAND FOR JURY TRIAL**</u> |

Plaintiff, Jessica Loggins ("Plaintiff"), by and through her attorneys, brings this action on behalf of herself and all others similarly situated against Defendant Beech-Nut Nutrition Company ("Defendant" or "Beech-Nut"). Plaintiff hereby alleges, on information and belief, except for information based on personal knowledge, which allegations are likely to have evidentiary support after further investigation and discovery, as follows:

## NATURE OF CASE

1. Defendant markets itself as selling only premium food products for children that is safe for human consumption ("Baby Food").

2. Defendant manufactures, markets, advertises, labels, distributes, and sells Baby Food products under the brand name Beech-Nut throughout the United States, including in this District.

3. Defendant states that it offers natural and organic Baby Foods "that are free from artificial preservatives, colors and flavors." Defendant touts that it "conduct[s]

over 20 rigorous tests on our purees, testing for up to 255 pesticides and heavy metals (like lead, cadmium, arsenic and other nasty stuff). Just like you would, we send the produce back if it's not good enough." (See https://www.beechnut.com/our-story/).

4.  Defendant's packaging and labels further emphasize quality and safe ingredients and even declares that the products are "100% Natural."

5.  Defendant's packaging and labels further emphasize that its Baby Food products are natural, organic, and safe for human infant consumption.

6.  Yet nowhere in the labeling, advertising, statements, warranties, and/or packaging does Defendant disclose that the Baby Foods include and/or have a high risk of containing heavy metals or other ingredients that do not conform to the labels, packaging, advertising, and statements.

7.  Indeed, the Baby Foods have been shown to contain significant levels of arsenic, mercury, lead, cadmium, and/or perchlorate—all known to pose health risks to humans and particularly infants.

8.  Despite this, Defendant warrants, promises, represents, misleads, labels, and/or advertises that the Baby Foods are free of any heavy metals, perchlorate, and/or unnatural ingredients by making assurances that the foods are natural and safe for infant consumption.

9.  Defendant asserts that its foods are "real food for babies," that its foods are tested for heavy metals, and that Defendant is "aware of no higher standards in the industry than the ones we employ," in direct contradiction to the true nature of its contents, which include, but are not limited to, heavy metals and/or perchlorate. "See HEALTHY BABIES BRIGHT FUTURES, What's In My Baby's Food? https://www.healthybabyfood.org/sites/healthybabyfoods.org/files/2019-10/BabyFoodReport_FULLREPORT_ENGLISH_R5b.pdf"

10.  Defendant also asserts that the Baby Foods are safe and appropriate for consumption by babies through its "Stage" representations, which identify the

appropriate age range that should consume the Baby Food. For example, "Stage 1, 4 months+," "Stage 2, 6 months+," etc. Each of the Baby Foods contain this "Stage" designation, identifying that it is suitable and appropriate for consumption by a baby or child.

11.    It was recently revealed on information and belief that Defendant was knowingly, recklessly, and/or negligently selling the Baby Foods containing arsenic, mercury, cadmium, lead, and/or perchlorate.

12.    Plaintiff bring this action individually and on behalf of all consumers who purchased the Baby Foods, to cause the disclosure of the presence and/or risk of the presence of heavy metals, perchlorate, and/or unnatural or other ingredients that do not conform to the labels, packaging, advertising, and statements in the Baby Foods; to correct the false and misleading perception Defendant has created in the minds of consumers that the Baby Foods are high quality, healthy, and safe for infant consumption; and to obtain redress for those who have purchased the Baby Foods.

## JURISDICTION AND VENUE

13.    This Court has original jurisdiction over all causes of action asserted herein under the Class Action Fairness Act, 28 U.S.C. §1332(d)(2), because the matter in controversy exceeds the sum or value of $5,000,000 exclusive of interest and costs and more than two-thirds of the Class reside in states other than the states in which Defendant is a citizen and in which this case is filed, and therefore any exemptions to jurisdiction under 28 U.S.C. §1332(d) do not apply.

14.    Venue is proper in this Court pursuant to 28 U.S.C. §1391, because Plaintiff have suffered injury as a result of Defendant's acts in this district, many of the acts and transactions giving rise to this action occurred in this District, Defendant conducts substantial business in this district, Defendant has intentionally availed itself of the laws and markets of this district, and Defendant is subject to personal jurisdiction in this district.

## PARTIES

15.    Plaintiff resides in Cocoa, Florida.  At various times during 2016, Plaintiff purchased one or more of the tainted Baby Food products from a local Publix grocery store in Cocoa, Florida for personal use, suffered injury in fact, and lost money and property as a result of the unfair competition and unlawful, unfair and deceptive business practices described herein.

16.    Defendant Beech-Nut Nutrition Company ("Beech-Nut") is incorporated in New York. Its headquarters and principal place of business is located at One Nutritious Place, Amsterdam, New York 12010.

17.    Defendant formulates, develops, manufactures, labels, distributes, markets, advertises, and sells the Baby Foods under the baby food brand names Beech-Nut throughout the United States, including in this District, during the Class Period (defined below). The advertising, labeling, and packaging for the Baby Foods, relied upon by Plaintiff were prepared, reviewed, and/or approved by Defendant and its agents, and were disseminated by Defendant and its agents through marketing, advertising, packaging, and labeling that contained the misrepresentations alleged herein. The marketing, advertising, packaging, and labeling for the Baby Foods were designed to encourage consumers to purchase the Baby Foods and reasonably misled the reasonable consumer, i.e., Plaintiff and the Class, into purchasing the Baby Foods. Defendant owns, manufactures, and distributes the Baby Foods, and created, allowed, negligently oversaw, and/or authorized the unlawful, fraudulent, unfair, misleading, and/or deceptive labeling and advertising for the Baby Foods. Defendant is responsible for sourcing ingredients, manufacturing the products, and conducting all relevant quality assurance protocols, including testing, for the ingredients and finished Baby Foods.

## FACTUAL ALLEGATIONS

18.     The Baby Food products sold by Defendant with deceptive packaging include the following:

Beech-Nut Rice Single Grain Baby Cereal – Stage 1; Beech-Nut Organics Oatmeal Whole Grain Baby Cereal – Stage 1; Beech-Nut Organics Prunes; Beech-Nut Naturals Prunes; Beech-Nut Organics Pear, Kale, & Cucumber; Beech-Nut Organics Apple, Raspberries, & Avocado; Beech-Nut Organics Apple, Kiwi, & Spinach; Beech-Nut Organics Banana, Cinnamon, & Granola; Beech-Nut Organics Pears; Beech-Nut Organics Sweet Potatoes; Beech-Nut Classics Sweet Carrots – Stage 2; Beech-Nut Organics *Just* Carrots – Stage 1; Beech-Nut Naturals *Just* Sweet Potatoes – Stage 1; Beech-Nut Organics *Just* Sweet Potatoes – Stage 1; Beech-Nut Classics Sweet Potatoes – Stage 2; Beech-Nut Classics Sweet Peas – Stage 2; Beech-Nut Naturals *Just* Butternut Squash – Stage 1; Beech-Nut Organic *Just* Pumpkin – Stage 1; Beech-Nut Organic *Just* Apples – Stage 1; Beech-Nut Naturals Bananas – Stage 1; Beech-Nut Naturals Beets, Pear & Pomegranate – Stage 2; Beech-Nut Naturals Sweet Corn and Green Beans; Beech-Nut Naturals Carrots; Beech-Nut Naturals Green Beans; Beech-Nut Naturals Apple and Blackberries; Beech-Nut Naturals Pear; Beech-Nut Naturals Apple and Kale; Beech-Nut Naturals Pineapple, Pear, and Avocado; Beech-Nut Naturals Sweet Potato; Beech-Nut Naturals Apple; Beech-Nut Naturals Apple, Pumpkin, and Cinnamon; Beech-Nut Naturals Spinach, Zucchini, and Peas; Beech-Nut Naturals Mango.

19.     The presence of heavy metals and/or perchlorate at any level would be material to a reasonable consumer due to the inherent and known risks of consumption and/or exposure.

20.     Throughout the Class Period, Defendant knew or should have known that the Baby Foods contained heavy metals, had a risk of containing heavy metals, and/or were not sufficiently tested for heavy metals. During this time, Defendant omitted

any reference to the presence, or the risk of the presence, of heavy metals from the Baby Foods' packaging.

21.     Defendant knew or should have known that heavy metals were a potentially dangerous contaminant that pose health risks to babies and children. Defendant knew or should have known that the standards for the presence of heavy metals in baby food have become increasingly stringent in recent years.

22.     Defendant knew or should have known that it owed consumers a duty of care to prevent, or at the very least, minimize, the presence, or risk of, of heavy metals in the Baby Foods.

23.     Defendant knew or should have known that it owed consumers a duty of care to adequately test for heavy metals in the Baby Foods.

24.     Defendant knew that consumers purchased the Baby Foods based on the reasonable expectation that Defendant manufactured the Baby Foods to the highest standards to be safe and healthy for consumption by babies. Defendant knew or should have known that consumers reasonably inferred that Defendant would hold the Baby Foods to the highest standards for preventing the presence, or risk, of heavy metals and for testing for heavy metals.

25.     A recent congressional report from the Subcommittee on Economic and Consumer Policy found that many of the products by the country's largest commercial baby food manufacturers, including Beech-Nut, "contain significant levels of toxic heavy metals, including arsenic, lead, cadmium and mercury, which can endanger infant neurological development." (See Laura Reiley, New Report Finds Toxic Heavy Metals in Popular Baby Foods. FDA Failed to Warn Consumers of Risk, The Washington Post (Feb. 4, 2021), available at https://www.washingtonpost.com/business/2021/02/04/toxic-metals-baby-food/ (last accessed February 4, 2021)

26.    The Food and Drug Administration ("FDA") and the World Health Organization ("WHO") have declared arsenic, lead, cadmium, and mercury "dangerous to human health, particularly to babies and children, who are most vulnerable to their neurotoxic effects."    (See Baby Foods Are Tainted with Dangerous Levels of Arsenic, Lead, Cadmium, and Mercury, Staff Report ("House Report"), Subcommittee on Economic and Consumer Policy of the Committee on Oversight and Reform, at 2, February 4, 2021, available at https://oversight.house.gov/sites/democrats.oversight.house.gov/files/2021-02-04%20ECP%20Baby%20Food%20Staff%20Report.pdf.)

27.    Arsenic, lead, mercury, and cadmium, four heavy metals found in the Baby Foods, are neurotoxins. Exposures to these four heavy metals "diminish quality of life, reduce academic achievement, and disturb behavior, with profound consequences for the welfare and productivity of entire societies." (See Healthy Babies Bright Futures Report, at 13)

28.    The four heavy metals "can harm a baby's developing brain and nervous system" and cause negative impacts such as "the permanent loss of intellectual capacity and behavioral problems like attention-deficit hyperactivity disorder (ADHD)." Even in trace amounts found in food, these heavy metals can alter the developing brain and erode a child's IQ.  (Id. at 1)

29.    Research continues to confirm that exposures to food containing arsenic, lead, mercury, and cadmium causes "troubling risks for babies, including cancer and lifelong deficits in intelligence[.]" (Id. at 1)

30.    The Baby Foods may contain arsenic which, when exposed to children early in life, causes "cognitive deficits among school-age children exposed early in life, and neurological problems in adults who were exposed to arsenic-poisoned milk as infants." (Id. at 13) "There is no evidence that the harm caused by arsenic is reversible."(Id.) Arsenic exposure also creates a risk of "respiratory, gastrointestinal,

haematological, hepatic, renal, skin, neurological and immunological effects, as well as damaging effects on the central nervous system[.]" See House Report, at 10 (quoting Miguel Rodríguez-Barranco et al., *Association of Arsenic, Cadmium and Manganese Exposure with Neurodevelopment and Behavioural Disorders in Children: A Systematic Review and Meta-Analysis* (June 1, 2013) (online at https://pubmed.ncbi.nlm.nih.gov/23570911/).

31.     Based on the risks associated with exposure to higher levels of arsenic, both the U.S. Environmental Protection Agency ("EPA") and U.S. Food and Drug Administration ("FDA") have set standards for the allowable limit of arsenic at 10 parts per billion ("ppb") for human consumption in apple juice (regulated by the FDA) and drinking water (regulating by the EPA). The FDA has taken action based on consumer products exceeding this limit, including testing and sending warning letters to the manufacturers. (See, e.g., Warning Letter from FDA to Valley Processing, Inc. (June 2, 2016), https://www.fda.gov/iceci/enforcementactions/warningletters /2016/ucm506526.htm.)

32.     Moreover, the FDA has set the maximum allowable arsenic levels in bottled water at 10 ppb of inorganic arsenic. (See Laura Reiley, *New Report Finds Toxic Heavy Metals in Popular Baby Foods. FDA Failed to Warn Consumers of Risk*, The Washington Post (Feb. 4, 2021), available at https://www.washingtonpost.com/business/2021/02/04/toxic-metals-baby-food/ (last accessed February 4, 2021).   The FDA is also considering limiting the action level for arsenic in rice cereals for infants to 100 ppb. (See FDA, Draft Guidance for Industry: Inorganic Arsenic in Rice Cereals for Infants: Action Level (Apr. 2016), https://www.fda.gov/downloads/Food/GuidanceRegulation/GuidanceDocumentsR egulatoryInformation/UCM493152.pdf.)

33.     Beech-Nut set an internal specifical limit of 3,000 ppb inorganic arsenic for certain ingredients and, as a result, used ingredients "with as much as 913.4 ppb arsenic" and "routinely used ingredients that exceeded 300 ppb total arsenic[.]" (See House Report at 17)

34.     The Baby Foods also may contain lead, which is another carcinogen and developmental toxin known to cause health problems. Lead exposure can seriously harm children's brain and nervous systems and is associated with a range of negative health outcomes including "behavioral problems, decreased cognitive performance, delayed puberty, and reduced postnatal growth." (See House Report at 11)

35.     Exposure to lead in food builds up over time. Buildup can and has been scientifically demonstrated to lead to the development of chronic poisoning, cancer, developmental, and reproductive disorders, as well as serious injuries to the nervous system, and other organs and body systems.

36.     Even very low exposure levels to lead "cause lower academic achievement, attention deficits and behavior problems. No safe level of exposure has been identified."

37.     One study found that "children age 0 to 24 months lose more than 11 million IQ points from exposure to arsenic and lead in food. Additionally, studies have established a link between lead exposure and Attention-Deficit/Hyperactivity Disorder (ADHD). (See House Report, at 12 (citing Gabriele Donzelli et al., *The Association Between Lead and Attention-Deficit/Hyperactivity Disorder: A Systematic Review* (Jan. 29, 2019) (online at www.mdpi.com/1660-4601/16/3/382/htm)).

38.     Although there is no federal standard for lead in baby food, health experts, including the American Academy for Pediatrics, the Environmental Defense Fund, and Consumer Reports, have agreed that lead in baby foods should not exceed 1 ppb. (See Laura Reiley, *New Report Finds Toxic Heavy Metals in Popular Baby Foods.*

*FDA Failed to Warn Consumers of Risk*, The Washington Post (Feb. 4, 2021), available at https://www.washingtonpost.com/business/2021/02/04/toxic-metals-baby-food/ (last accessed February 4, 2021)) "The European Union has set the maximum lead level in infant formula to 20 ppb." (Id.)

39.     Beech-Nut set an internal specifical limit of 5,000 ppb for lead in certain ingredients, which far surpasses any existing regulatory standard in existence. (See House Report at 3s)

40.     The Baby Foods used ingredients containing as much as 886.9 ppb lead and "ingredients with high lead content, including 483 that contained over 5 ppb lead, 89 that contained over 15 ppb lead, and 57 that contained over 20 ppb lead." (See House Report at 3)

41.     Defendant only tested its ingredients, not its finished products, for lead and sold products with significant amounts of lead. (See House Report at 22)

42.     The Baby Foods also may contain mercury, which increases the risk for cardiovascular disease and can cause vision, intelligence, and memory problems for children exposed in utero. Exposure to mercury has been linked to higher risk of lower IQ scores and intellectual disability. (See Healthy Babies Bright Futures Report, at 14) Mercury exposure at two and three years of age has been positively associated with autistic behaviors among pre-school age children. (See House Report at 12)

43.     Despite its excessively high cadmium limit, Beech-Nut sold eleven products that surpassed its limit, including potato containing 119.6, 143.5, and 148.4 ppb cadmium. (See House Report at 38)

44.     Beech-Nut "routinely used high-arsenic additives and ingredients containing up to 344 ppb cadmium." (See Laura Reiley, *New Report Finds Toxic Heavy Metals in Popular Baby Foods. FDA Failed to Warn Consumers of Risk*, The Washington Post     (Feb.     4,     2021),     available     at

https://www.washingtonpost.com/business/2021/02/04/toxic-metals-baby-food/ (last accessed February 4, 2021) The Baby Foods used "105 ingredients that tested over 20 ppb cadmium." (See House Report at 3)

45.    Indeed, the FDA has acknowledged that "exposure to [these four heavy] metals are likely to have the most significant impact on public health" and has prioritized them in connection with its heavy metals workgroup looking to reduce the risks associated with human consumption of heavy metals. (See FDA, Metals, https://www.fda.gov/Food/FoodborneIllnessContaminants/Metals/default.htm )

46.    Despite the known risks of exposure to these heavy metals, Defendant has negligently, recklessly, and/or knowingly sold the Baby Foods without disclosing they may contain levels of arsenic, mercury, cadmium and lead to consumers like Plaintiff.

47.    Additionally, Defendant knew or should have been aware that a consumer would be feeding the Baby Foods multiple times each day to his or her child, making it the primary source of food for the child. This leads to repeated exposure of the heavy metals to the child.

48.    Defendant has wrongfully and misleadingly advertised and sold the Baby Foods without any label or warning indicating to consumers that these products contain heavy metals, or that these toxins can over time accumulate in the baby's body to the point where poisoning, injury, and/or disease can occur.

49.    Defendant's omissions are material, false, misleading, and reasonably likely to deceive the public. This is true especially considering the long-standing campaign by Defendant to market the Baby Foods as healthy, safe, and high-quality to induce consumers, such as Plaintiff, to purchase the products. For instance, Defendant markets the Baby Foods as "natural," appropriate for certain "Stage[s]" (i.e. 4+ months, 6+ months etc.) and "real food for babies," both on the products' packaging and on Defendant's websites.

50.     Using such descriptions and promises makes Defendant's advertising campaign deceptive based on presence, or risk of, of heavy metals in the Baby Foods. Reasonable consumers, like Plaintiff, would consider the mere presence or risk of heavy metals in the Baby Foods as a material fact in considering what baby food products to purchase. Defendant's above-referenced statements, representations, partial disclosures, and omissions are false, misleading, and crafted to deceive the public as they create an image that the Baby Foods are healthy, safe, high-quality and free of contaminants such as arsenic and lead.

51.     Moreover, Defendant knew or should have reasonably expected that the presence, or risk, of heavy metals in its Baby Foods is something an average consumer would consider in purchasing baby food. Defendant's representations and omissions are false, misleading, and reasonably likely to deceive the public.

52.     Moreover, reasonable consumers, such as Plaintiff and other members of the Class (as defined herein), would have no reason to believe and/or anticipate that the Baby Foods are not "natural," appropriate for consumption by a baby in the stated "Stage," or "real food for babies." Non-disclosure and/or concealment of the presence, or risk of, heavy metals in the Baby Foods coupled with the misrepresentations alleged herein by Defendant suggesting that the food is appropriate for consumption by babies is intended to and does, in fact, cause consumers to purchase a product Plaintiff and members of the class would not have bought if the true quality was disclosed. As a result of these false or misleading statements and omissions, Defendant has generated substantial sales of the Baby Foods.

53.     Plaintiff brings this action individually and on behalf of all other similarly situated consumers who purchased the Baby Foods, in order to cause the disclosure of the presence, or risk, of heavy metals that pose a known risk to infants in the Baby Foods, to correct the false and misleading perception Defendant has created in the

minds of consumers that the Baby Foods are high quality, safe, and healthy, and to obtain redress for those who have purchased the Baby Foods.

54. At all times during the Class Period, Defendant knew or should have known that the Baby Foods contained perchlorate, were at risk of containing perchlorate, and/or were not sufficiently tested for perchlorate. During this time, Defendant omitted any reference to the presence or risk of perchlorate from the Baby Foods' packaging.

55. Defendant knew or should have known that perchlorate is a potentially dangerous contaminant that poses health risks to babies and children.

56. Defendant knew or should have known that it owed consumers a duty of care to prevent, or at the very least, minimize, the presence of perchlorate in the Baby Foods.

57. Defendant knew or should have known that it owed consumers a duty of care to adequately test for perchlorate in the Baby Foods.

58. Defendant knew that consumers purchased the Baby Foods based on the reasonable expectation that Defendant manufactured the Baby Foods to the highest standards to be safe and healthy for consumption by babies. Defendant knew or should have known that consumers reasonably inferred that Defendant would hold the Baby Foods to the highest standards for preventing the presence or risk of perchlorate and for testing for perchlorate.

59. Perchlorate disrupts thyroid functions that are crucial to brain development. Perchlorate has been "linked to IQ loss among children born to mothers with thyroid dysfunction." (See Healthy Babies Bright Futures Report, at 8)

60. The levels of perchlorate in children's food has increased significantly from 2005. Perchlorate—which is both a naturally occurring and manmade chemical—was approved by the FDA in 2005 for use as an antistatic in plastic food packaging. In 2016, the FDA expanded the approval to cover dry food handling equipment.

Hypochlorite bleach, which is used to disinfect food processing equipment, can also create perchlorate as a product of degradation.

61.   The dangers of perchlorate in human food are recognized by the FDA. (See FDA, Exploratory Survey Data on Perchlorate in Food 2004-2005, https://www.fda.gov/food/chemicals/exploratory-survey-data-perchlorate-food-2004-2005 ("Human exposure to sufficient doses of perchlorate can interfere with iodide uptake into the thyroid gland, disrupting its functions and potentially leading to a reduction in the production of thyroid hormones.")

62.   Still, certain Baby Foods are sold by Defendant that may contain levels of perchlorate.

63.   Despite the risk and/or actual presence of these unnatural and potentially harmful chemicals, Defendant prominently warrants, claims, features, represents, advertises, or otherwise markets the Baby Foods as "natural," appropriate for consumption by a baby in the stated "Stage," and "real food for babies" and fails to disclose the presence, or risk of, heavy metals and perchlorate.

64.   Defendant falsely advertises the Baby Foods as nutritious and healthy while omitting any mention of the risk and/or actual inclusion of heavy metals and perchlorate.

65.   Defendant formulates, develops, manufactures, labels, packages, distributes, markets, advertises, and sells its extensive Beech-Nut lines of baby food products across the United States, including the Baby Foods.

66.   Defendant positions the Baby Food as "natural and organic products that are free from artificial preservatives, colors and flavors" to place them within the premium category of baby food.

67.   Defendant has represented a commitment to using real and simple ingredients. Indeed, the packaging emphasizes to consumers that the Baby Foods are natural or organic and represent that there is "[n]othing artificial added."

68.    Defendant had a duty to ensure the Baby Food lived up to these representations and marketing positioning the Baby Food as high-quality and premium. As such, Defendant knew or should have known that the Baby Foods had a high risk and/or actually included heavy metals, perchlorate, and/or unnatural or other ingredients that do not conform to the products' labels, packaging, advertising, and statements, including only natural, organic, or "real food" ingredients.

69.    Defendant specifically promises on its website that it tests its foods "for up to 255 pesticides and heavy metals (like lead, cadmium, arsenic and other nasty stuff)." As such, Defendant knew or should have known that the Baby Foods contained, or had a risk of containing, heavy metals, perchlorate, and/or unnatural or other ingredients.

70.    Based on these false representations, Defendant charges a premium, knowing that the claimed natural make-up of the Baby Foods (as well as all of the other alleged false and/or misleading representations discussed herein) is something an average consumer would consider as a reason in picking a more expensive baby food product. By negligently and/or deceptively representing, marketing, and advertising the Baby Foods as natural, and safe for babies' consumption, Defendant wrongfully capitalized on, and reaped enormous profits from, consumers' strong preference for premium natural baby food products.

71.    Additionally, Defendant knew or should have known that its ingredients, and the final products, could contain materials such as toxins, heavy metals, and perchlorate, and yet they did not test all ingredients and finished products, including the Baby Foods, for such materials.

72.    The Baby Foods are available at numerous retail and online outlets throughout the United States, including Florida.

73.    Third-party testing has made clear that the Baby Foods may in fact contain levels of both heavy metals and/or perchlorate.

74.     As a result of Defendant's omissions, a reasonable consumer would have no reason to suspect the risk and/or presence of heavy metals and/or unnatural or other ingredients that do not conform to the labels, packaging, advertising, and statements in the Baby Foods without conducting his or her own scientific tests, or reviewing third-party scientific testing of these products.

75.     Defendant has wrongfully and misleadingly advertised and sold the Baby Foods without any label or warning indicating to consumers that these products may contain heavy metals, perchlorate, and/or unnatural or other ingredients that do not conform to the labels, packaging, advertising, and statements, or that these toxins can accumulate over time in the baby's body to the point where poisoning, injury, and/or disease can occur.

76.     Furthermore, Defendant had knowledge and notice of its breaches of its express and implied warranties.

77.     Defendant had sufficient notice of its breaches of express warranties. Defendant has, and had, exclusive knowledge of the physical and chemical makeup of the Baby Foods. Defendant also had exclusive knowledge of its suppliers and whether any of them supplied ingredients at risk for containing perchlorate.

78.     Defendant received notice of the contaminants in its baby food products, including the Baby Foods, through the Healthy Babies Bright Futures nonprofit organization, which found levels of heavy metals and perchlorate in its Baby Food products.

79.     Defendant previously released a response, posted on its website, to a study of lead contamination in baby food products by the Environmental Defense Fund. (See https://www.beechnut.com/beech-nut-edf-response/) In that response, Defendant stated that the report was based on data from "before Beech-Nut introduced a completely new line of products and revamped our sourcing standards. In fact, all

the Beech-Nut products listed in the report have either been reformulated or discontinued."

80.    That same response stated, "Our goal is to minimize the amount of heavy metals in our products through testing and partnering with our suppliers to identify the areas of the country and specific farms with the lowest levels possible." This response discusses the source of lead, cadmium, and arsenic, and what Defendant contends to be acceptable levels of those heavy metals in baby food products.

81.    In that same response, Defendant boasted, "all our products meet or exceed the FDA draft guidance for inorganic arsenic in rice cereals."

82.    Defendant did not change its packaging or labeling to include a disclaimer that the Baby Foods contained, or may contain, any levels of heavy metals.

## PLAINTIFF'S CLAIM

83.    Plaintiff is a resident of Cocoa, Florida and purchased Defendant's tainted Baby Foods for her child. Plaintiff purchased tainted Beech-Nut Naturals in various flavors from a local Publix grocery store in Cocoa, Florida numerous times during the year of 2016. Prior to purchasing the Baby Foods, Plaintiff saw Defendant's nutritional claims on the packaging, including "natural", the "Stage" representations, and "real food for babies," which she relied on in deciding to purchase the Baby Foods. During that time, based on Defendant's material omissions and the false and misleading claims, warranties, representations, advertisements and other marketing by Defendant, Plaintiff was unaware that the Baby Foods contained any level of heavy metals, chemicals, or toxins, and would not have purchased the food if that was fully disclosed, or she would not have paid as much for the Baby Foods if that information was fully disclosed. Plaintiff was injured by paying a premium for the Baby Foods that have no or *de minimis* value—or whose value was at least less than what she paid for the Baby Food—based on the presence of the alleged heavy metals, chemicals, and toxins.

## CLASS ACTION ALLEGATIONS

84.    Plaintiff brings this action on behalf of herself and all similarly situated consumers pursuant to Rules 23(a) and 23(b)(2) and (3) of the Federal Rules of Civil Procedure on behalf of all others similarly situated, and as a member of the Classes defined as follows (collectively, the "Class"). The Class of persons whom Plaintiff seeks to represent is defined as:

All citizens of the United States who, within the relevant statute of limitations periods, purchased Defendants' Baby Food ("Nationwide Class") for personal use and not for resale;

All persons in Florida who, from October 1, 2015 to the present, purchased Defendant's Baby Food (the "Florida Subclass") for personal use and not for resale.

85.    Excluded from the Class are the Defendant, any parent, subsidiary or affiliate of the Defendant, any entity in which the Defendant has a controlling interest, and the respective officers, directors, employees, agents, legal representatives, heirs, predecessors, successors, and assigns of such excluded persons or entities.

86.    Plaintiff reserves the right to amend or otherwise alter the class definition presented to the Court at the appropriate time, or to propose or eliminate sub-classes, in response to facts learned through discovery, legal arguments advanced by Defendants, or otherwise.

87.    Plaintiff and the members of the Class are so numerous that joinder of all members individually, in one action or otherwise, is impracticable.

88.    There are questions of law and fact common to the Class.

89.    Plaintiff's claims are typical of the claims of the members of the Class.  The named Plaintiff is a member of the Class of consumers described herein.

90.    The named Plaintiff is willing and prepared to serve the Court and the proposed Class in a representative capacity with all the obligations and duties

material thereto. Plaintiff will fairly and adequately protect the interests of the Class and has no interests adverse to or which directly and irrevocably conflicts with the interests of other members of the Class.

91. The interests of the named Class representative are co-extensive with, and not antagonistic to, those of the absent Class members. The proposed representative will undertake to represent and protect the interests of the absent Class members.

92. The named Plaintiff has engaged the services of counsel indicated below. Counsel are experienced in complex class-action litigation, will adequately prosecute this action, and will assert and protect the rights of, and otherwise will represent the named Class representative and absent Class members.

93. This action is appropriate as a class action pursuant to Rule 23(b)(2) and (b)(3) of the Federal Rules of Civil Procedure.

94. This action involves questions of law and fact common to Plaintiff and all members of the Class. Questions of law and fact common to Plaintiff and the Class include, but are not limited to, the following:

a. whether Defendant owed a duty of care to Plaintiff and the Class;

b. whether Defendant knew or should have known that the Baby Foods contained, or may contain, heavy metals;

c. whether Defendant knew or should have known that the Baby Foods contained, or may contain, perchlorate;

d. whether Defendant wrongfully represented and continues to represent that the Baby Foods are natural and safe for human infant consumption;

e. whether Defendant wrongfully represented and continues to represent that the Baby Foods are healthy, superior quality, nutritious and safe for consumption;

f. whether Defendant wrongfully represented and continues to represent that the Baby Foods are natural;

g. whether Defendant wrongfully represented and continues to represent that the Baby Foods appropriate for consumption by various "Stage[s]" of babies;

h. whether Defendant wrongfully represented and continues to represent that the manufacturing of the Baby Foods are subjected to rigorous standards, including testing for heavy metals;

i. whether Defendant wrongfully failed to disclose that the Baby Foods contained, or may contain, heavy metals and/or perchlorate;

j. whether Defendant's representations in advertising, warranties, packaging, and/or labeling are false, deceptive, and misleading;

k. whether those representations are likely to deceive a reasonable consumer;

l. whether a reasonable consumer would consider the presence, or risk of, heavy metals and/or perchlorate as a material fact in purchasing baby food;

m. whether Defendant had knowledge that those representations were false, deceptive, and misleading;

n. whether Defendant continues to disseminate those representations despite knowledge that the representations are false, deceptive, and misleading;

o. whether a representation that a product is healthy, superior quality, nutritious and safe for consumption and does not contain arsenic, mercury, cadmium, lead and/or perchlorate is material to a reasonable consumer;

p. whether Defendant's representations and descriptions on the labeling of the Baby Foods are likely to mislead, deceive, confuse, or confound consumers acting reasonably;

r. whether Defendant breached its express warranties;

s. whether Defendant breached its implied warranties;

t. whether Defendant engaged in unfair trade practices;

u. whether Defendant engaged in false advertising;

v. whether Defendant's conduct was negligent per se;

w. whether Defendant made negligent and/or fraudulent misrepresentations and/or omissions;

x. whether Plaintiff and the members of the Class are entitled to actual, statutory, and punitive damages; and

y. whether Plaintiff and members of the Class are entitled to declaratory and injunctive relief.

95.     There is no plain, speedy or adequate remedy other than by maintenance of this lawsuit as a class action because individual damages are relatively small, making it economically infeasible for Class members to pursue remedies individually.  The prosecution of separate actions by individual members of the Class, even if theoretically possible, would create a risk of inconsistent or varying adjudications with respect to individual Class members against Defendant and would establish incompatible standards of conduct for Defendant.

96.     Judicial determination of the common legal and factual issues essential to this case would be far more efficient and economical as a class action than in piecemeal individual determinations.

97.     A class action is superior to other available methods for the fair and efficient adjudication of this controversy for at least the following reasons:

•       given the complexity of issues involved in this action and the expense of litigating the claims, few, if any, Class members could afford to seek legal redress individually for the wrongs that Defendant committed against them, and absent Class members have no substantial interest in individually controlling the prosecution of individual actions;

•       when Defendant's liability has been adjudicated, claims of all Class members can be determined by the Court;

•  this action will cause an orderly and expeditious administration of the Class claims and foster economies of time, effort and expense, and ensure uniformity of decisions; and

•  without a class action, many Class members would continue to suffer injury, and Defendant's violations of law will continue without redress while Defendant continues to reap and retain the substantial proceeds of their wrongful conduct.

98.  Plaintiff knows of no difficulty that will be encountered in the management of this litigation which would preclude its maintenance as a class action.

99.  Defendant has acted on grounds applicable to the Class generally; therefore, Plaintiff seeks equitable and injunctive relief on behalf of the entire Class on grounds generally applicable to the entire Class.

## COUNT I

### For Violations of Florida's Deceptive and Unfair Trade Practices Act, Fla. Stat. 501.201 et seq.

100.  Plaintiff realleges and incorporates by reference each of the allegations contained in the paragraphs above as if fully set forth herein.

101.  Defendant violated and continues to violate Florida's Deceptive and Unfair Trade Practices Act by engaging in unfair methods of competition, unconscionable acts and practices, and unfair and deceptive acts and practices in the conduct of their business.

102.  The material misstatements and omissions alleged herein constitute deceptive and unfair trade practices, in that they were intended to and did deceive Plaintiff and the general public into believing that Defendant's Baby Food was free from toxins.

103. Plaintiff and Class members relied upon these advertisements in deciding to purchase the Product. Plaintiff's reliance was reasonable because of Defendant's reputation as reliable company.

104. Had Plaintiff known that the Products were not as advertised, she would not have purchased them.

105. As a result of Defendant's deceptive and unfair acts, Plaintiff and Class members have been damaged in the amount paid for the Baby Food.

106. Defendant's conduct offends established public policy, and is immoral, unethical, oppressive, unscrupulous and substantially injurious to consumers.

107. Plaintiff and Class members are entitled to damages in an amount to be proven at trial.

108. Defendant should also be ordered to cease its deceptive advertising and should be made to engage in a corrective advertising campaign to inform consumers that their Baby Food is not of the quality advertised.

## COUNT II

### For False and Misleading Advertising, Fla. Stat. § 817.41

109. Plaintiff realleges and incorporates by reference each of the allegations contained in the paragraphs above as if fully set forth herein.

110. On their website, in print advertisements, and in other forms of advertisements, Defendant made numerous misrepresentations of material fact that regarding their Baby Food quality.

111. Defendant knew that these statements were false.

112. Defendant made these statements for the purpose of selling property, and intended that consumers rely upon them in purchasing its Products.

113. Plaintiff and Class members did in fact rely upon these statements. Reliance was reasonable and justified because of Defendant's reputation as a reliable company.

114. As a result of Defendant's misrepresentations, Plaintiff and Class members suffered damages in the amount paid for Defendant's Baby Food.

115. Plaintiff and Class members are entitled to damages and injunctive relief as set forth above.

## COUNT III

### Unjust Enrichment

116. Plaintiff incorporates by reference each of the preceding allegations as though fully set forth herein.

117. Plaintiff and Class members conferred a benefit on Defendant by purchasing the Products at an inflated price.

118. Defendant received the moneys paid by Plaintiff and Class members and thus knew of the benefit conferred upon them.

119. Defendant accepted and retained the benefit in the amount of the profits they earned from Defendant's Baby Food sales paid by Plaintiff and Class members.

120. Defendant has profited from their unlawful, unfair, misleading, and deceptive practices and advertising at the expense of Plaintiff and Class members, under circumstances in which it would be unjust for Defendant to be permitted to retain the benefit.

121. Plaintiff does not have an adequate remedy at law against Defendant.

122. Plaintiff and Class members are entitled to restitution of the excess amount paid for the Product and disgorgement of the profits Defendant derived from their Baby Food sales.

## COUNT IV

### Breach of Express Warranty

123.  Plaintiff incorporates by reference and realleges every allegation contained above, as though fully set forth herein.

124.  Defendant marketed and sold the Baby Foods into the stream of commerce with the intent that the Baby Foods would be purchased by Plaintiff and the Class.

125.  Defendant expressly warranted, advertised, and represented to Plaintiff and the Class that its Baby Foods are:

 a. Natural;

 b. Appropriate for certain "Stage[s]" of babies; and

 c. "real food for babies"

126.  Defendant made these express warranties regarding the Baby Foods' quality, ingredients, and fitness for consumption in writing through its website, advertisements, and marketing materials and on the Baby Foods' packaging and labels. These express warranties became part of the basis of the bargain that Plaintiff and the Class entered into upon purchasing the Baby Foods.

127.  Defendant's advertisements, warranties, and representations were made in connection with the sale of the Baby Foods to Plaintiff and the Class. Plaintiff and the Class relied on Defendant's advertisements, warranties, and representations regarding the Baby Foods in deciding whether to purchase Defendant's products.

128.  Defendant's Baby Foods do not conform to Defendant's advertisements, warranties and representations in that they:

 a. Are not natural or suitable for consumption by human infants; and

 b. Contain, or may contain, levels of various heavy metals and/or perchlorate.

129.  Defendant was on notice of this breach as they were aware of the included heavy metals and/or perchlorate in the Baby Foods and based on the public investigation by the Healthy Babies Bright Futures report that showed its baby food products as unhealthy.

130. Privity exists because Defendant expressly warranted to Plaintiff and the Class through the warranting, packaging, advertising, marketing, and labeling that the Baby Foods were healthy, natural, and suitable for consumption and by failing to make any mention of heavy metals, perchlorate, and/or unnatural or other ingredients.

131. As a direct and proximate result of Defendant's conduct, Plaintiff and the Class have suffered actual damages in that they purchased Baby Foods that were worth less than the price they paid and they would not have purchased at all had they known of the risk and/or presence of heavy metals, perchlorate, and/or unnatural or other ingredients that do not conform to the products' labels, packaging, advertising, and statements.

132. Plaintiff and the Class seek actual damages, injunctive and declaratory relief, attorneys' fees, costs, and any other just and proper relief available thereunder for Defendant's failure to deliver goods conforming to their express warranties and resulting breach.

## COUNT V

### Breach of Implied Warranty of Merchantability

133. Plaintiff incorporates by reference and realleges every allegation contained above, as though fully set forth herein.

134. Defendant is a merchant engaging in the sale of goods to Plaintiff and the Class.

135. There was a sale of goods from Defendant to Plaintiff and the Class.

136. At all times mentioned herein, Defendant manufactured or supplied the Baby Foods, and prior to the time the Baby Foods were purchased by Plaintiff and the Class, Defendant impliedly warranted to them that the Baby Foods were of merchantable quality, fit for their ordinary use (consumption by babies) and conformed to the promises and affirmations of fact made on the Baby Foods'

containers and labels, including that the food was natural and safe and appropriate for human infant consumption. Plaintiff and the Class relied on Defendant's promises and affirmations of fact when they purchased the Baby Foods.

137. The Baby Foods were not fit for their ordinary use, consumption by babies, and did not conform to Defendant's affirmations of fact and promises as they contained, or were at risk of containing, heavy metals, perchlorate, and/or unnatural or other ingredients or contaminants that do not conform to the packaging.

138. The Baby Foods did not conform to Defendant's affirmations of fact that they were natural because they contained the chemical perchlorate.

139. Defendant breached its implied warranties by selling Baby Foods that failed to conform to the promises or affirmations of fact made on the container or label as each product contained heavy metals, perchlorate, and/or unnatural or other ingredients or contaminants that do not conform to the packaging.

140. Defendant was on notice of this breach, as it was aware of the heavy metals and/or perchlorate included, or at risk, in the Baby Foods, and based on the public investigation by Healthy Babies Bright Futures that showed Defendant's baby food products as unhealthy and contaminated.

141. Privity exists because Defendant impliedly warranted to Plaintiff and the Class through the warranting, packaging, advertising, marketing, and labeling that the Baby Foods were natural, and suitable for consumption by babies, and by failing to make any mention of heavy metals, perchlorate, and/or unnatural or other ingredients.

142. As a direct and proximate result of Defendant's conduct, Plaintiff and the Class have suffered actual damages in that they have purchased Baby Food that is worth less than the price they paid and that they would not have purchased at all had they known of the presence or risk of heavy metals, perchlorate, and/or unnatural or other ingredients.

143. Plaintiff and the Class seek actual damages, injunctive and declaratory relief, attorneys' fees, costs, and any other just and proper relief available thereunder for Defendant's failure to deliver goods conforming to their implied warranties and resulting breach.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays this Court:

A.     Certify this action as a class action;

B.     Award compensatory, statutory, and punitive damages as to all Counts where such relief is permitted by law;

C.     Enjoin Defendant's conduct and order Defendant to engage in a corrective advertising and labeling/disclosure campaign;

D.     Award equitable monetary relief, including restitution;

E.     Award pre-judgment and post-judgment interest at the legal rate;

F.     Award Plaintiff and Class members the costs of this action, including reasonable attorneys' fees and expenses; and

G.     Award such other and further legal and equitable relief as this Court may deem just and proper.

## JURY DEMAND

Plaintiff demands a trial by jury on all issues so triable.


DATED:  March 9, 2021                              s/William C. Wright

                                                   WILLIAM WRIGHT
                                                   THE WRIGHT LAW OFFICE, P.A.

FL BAR NO. 138861
301 Clematis Street
Suite 3000
West Palm Beach, FL 33410
Telephone: (561) 514-0904
Facsimile: (561) 514-0905
willwright@wrightlawoffice.com

DANIEL FAHERTY
TELFER, FAHERTY, &
ANDERSON, PL
FL BAR NO. 379697
815 S. Washington Avenue
Suite 201
Titusville, FL 32780
Telephone: (321) 269-6833
Facsimile: (321) 383-9970
danfaherty@hotmail.com